IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

GLEN R. REED, JR., )
)
    Plaintiff, )
) Civil Action No. 5:24-cv-391
v. )
)
UNITED STATES OF AMERICA, )
)
    Defendant. )

**COMPLAINT WITH JURY DEMAND**

Plaintiff, Glen R. Reed, Jr., complaining of Defendant, the United States of America, alleges that:

**PARTIES AND JURISDICTION**

1. Plaintiff, Glen R. Reed, Jr., is a citizen and resident of Cumberland County.

2. Defendant, the United States of America, is a governmental entity that at all relevant times acted through employees of its agency the Womack Army Medical Center.

3. The health care providers who provided care to Plaintiff Glen R. Reed, Jr., were at all times employees and/or agents of the United States of America.

4. At all relevant times herein, the health care providers who provided care to Plaintiff Glen R. Reed, Jr., were acting within the course and scope of their employment and/or agency relationship with Defendant, the United States of America.

5. Plaintiff seeks recovery in this Action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* Jurisdiction over the subject matter of this case is conferred by 28 U.S.C. §§ 1331 and 1346(b).

6. Venue lies in this judicial district pursuant to 28 U.S.C. § 1402(b), in that the act or omission complained of occurred herein, and pursuant to § 1391(e), in that a substantial part of the events or omissions giving rise to this claim occurred herein.

7. Notice of Plaintiff's tort claims was submitted by Plaintiff on 15 November 2023. Notice of Plaintiff's tort claims was received by the United States of America through its agency the Womack Army Medical Center on 21 November 2023. The Notice is attached to this Complaint and incorporated herein as EXHIBIT 1.

8.      The 180 day statutory period for consideration of the notice of claim expired on 21 May 2024, well prior to the filing of this Action. As of the filing of this Complaint, the Womack Army Medical Center has not responded to Plaintiff's Notice of Claim. Accordingly, Plaintiff has met all conditions precedent for the filing of this Complaint to be proper and adequate.

9.      Plaintiff seeks all damages permitted by the Federal Tort Claims Act arising from his injuries.

## FIRST CLAIM FOR RELIEF

10.     The allegations contained in the paragraphs hereinabove are re-alleged and incorporated into this First claim for Relief by reference.

11.     Hospital facilities such as Defendant are required to provide each patient with care, treatment and services according to individualized plan of care.

12.     Patients with impaired mobility, incontinence and/or inadequate dietary intake are at risk for development of pressure injuries while in a hospital. A pressure injury is localized damage to skin and underlying soft tissue usually over a boney prominence, such as the sacrum or coccyx. Pressure injuries are caused by intense or prolonged (two hours or more) pressure on vulnerable area of the body.

13.     Pressure injuries are generally classified in stages, from Stage 1 - a superficial reddening of the skin - to Stage 4 - a full thickness skin and tissue loss with exposed or directly palpable fascia, muscle, tendon, ligament, cartilage or bone in the ulcer. In addition, intact skin with a localized area of persistent deep red, maroon or purple discoloration caused by intense or prolonged pressure is classified as a deep tissue injury and may evolve rapidly to reveal a full thickness pressure injury.

14.     The National Quality Forum defines "never events" as errors in medical care that are clearly identifiable, preventable, and serious in consequences for patients, and that indicate a real problem in the safety and credibility of a health care facility. Stage 3 or 4 pressure injuries acquired after admission to a healthcare facility are classified as "never events."

15.     On November 11, 2021, Plaintiff was admitted to Womack Army Medical Center with shoulder pain after falling out of a chair. He was 68-year-old. He was found to have significant leukocytosis and elevated inflammatory markers without a clear source of infection.

16.     Plaintiff was found to have MRSA sepsis, the source of which was found to be a retropharyngeal abscess as well as an abscess on his right shoulder.

2

17. On November 13, 2021, Plaintiff underwent an incision and drainage for the abscesses.

18. On November 16, 2021, more abscesses were found in his right psoas and potentially his right paraspinal muscles and they were drained.

19. On November 17, 2021, Plaintiff was stable enough to transition out of intensive care unit.

20. On November 18, 2021, Plaintiff had an episode of melanotic stool and was started on an IV of pantoprazole. He had multiple non-actively bleeding duodenal and gastic ulcers, thought to be the source of his melanotic stool.

21. On November 29, 2021, Dr. Stephen Breisach noted that Plaintiff had a sacral pressure ulcer and wrote in his notes, "chronic sacral ulcer has strong foul odor, no active discharge, fresh granulation tissue present with some discolored edges, 3-4 inches in diameter with surrounding erythema. Wound not probed, uncertain depth. Sacral Ulcer-Chronic worsening. Exam as above, has been non tender and without odor previously. Will engage wound care."

22. On December 1, 2021, Plaintiff was seen by Sue Rouse, RN who noted "Received call from staff nurse requesting the above patient be seen by Wound Care for a sacral pressure wound. Informed nurse I have not been made aware the above patient has a Pressure Wound, but that I have following him for the right shoulder abscess. On assessment patient was lying in bed with visitor at bedside, staff nurse assisted with repositioning to expose the wound. Area is black, measured 8.5 x 10 x 3 cm, no drainage observed, peri skin is excoriated and slightly red. Has the outline of the Mepilex in the surrounding tissue. Staff have informed he refuses to turn q 2 hours and while I was in the room he said he will start tonight. I have instructed him he has to turn q 2 hours starting now or the wound can become worse."

23. There is no evidence in the medical record that the nursing staff was attempting to turn and reposition Plaintiff or that Plaintiff was refusing to be turned. There are no records of the nursing staff turning and repositioning Plaintiff.

24. Plaintiff was seen by Dr. Rowan Sheldon on December 1, 2021 who recorded, "We are consulted for his sacral decubitus ulcer which, by the looks of it, has been present for several weeks. There is clearly necrotic tissue in the central aspect and this may extend anteriorly along the right aspect of the wound. We will perform a debridement in the operating room tomorrow morning. It is critically important to medically optimize this patient and follow the recommendations that have now been laid out by multiple services."

25. Despite the fact that Dr. Sheldon remarks that the pressure ulcer has likely been there for several weeks, there is no record of it in Plaintiff's medical records until

3

November 29, 2021, over 2 weeks after his admission.

26. On December 2, 2021, Dr. Sheldon performed a debridement on Plaintiff's sacral decubitus ulcer and a wound vac was placed on the wound. A debridement is done by surgically removing infected tissue with a scalpel. Then the skin around the wound is thoroughly cleaned and disinfected. The wound is probed with a metal instrument to determine its depth. Infected tissue is excised and the ulcer is then washed out.

27. On December 3, 2021 Dr. Sheldon recorded that Plaintiff had a "large sacral decubitus ulcer and severe protein malnutrition. Recommendations remain the same with an emphasis on off-loading and nutrition… Q2H turns when the patient is in bed are essential and the clinitron bed is a good step. Please order wedges to be available to assist nursing staff with turns. The patient's malnutrition is incredibly problematic. While is he is capable of eating, he not eating sufficient he is not eating sufficient amounts of protein. The patient needs daily nutrition team input and we should be keeping strict calorie counts. The patients needs to have ensure with every meal and unless otherwise noted by nutrition, his goal should be a minimum of 4 ensures per day. We will use this weekend as his trial of life. If he is unable to increase his PO intake by Monday we should pursue NG feeding tube and discuss PEG.. I will plan to take the patient back to the operating room on Monday 6Dec TSA for repeat debridement and VAC placement."

28. On December 6, 2021, another debridement was done on Plaintiff's sacral decubitus ulcer.

29. On December 8, 2021, Dr. Sheldon recorded that Plaintiff had a "large decubitus ulcer and severe protein malnutrition. Recommendations remain the same with an emphasis on off-loading and nutrition. The patient's turns are currently inadequate. Rotating the bed is not sufficient to offload the sacrum. The patients needs to be propped up on each side every 2 hours. Wedges are necessary for this to work properly. The patient's bariatric bed is also insufficient and a clinitron must be made available for the patient. These issues must be fixed by nursing and the pt's primary team. The patient is doing his part by eating an ensure with every meal. He should increase to 4-5 ensures daily and we should repeat a prealbumin every Friday. I will take him to the OR today for repeat debridement and wound vac exchange."

30. On December 10, 2021 Plaintiff was seen by Dr. Shelden who recorded "turns are improving but remain inconsistent… wound vac holding, on removal with wound care team today, there is silver discoloration of the base of the wound but roughly 50% of the wound demonstrates beefy red granulation. Measurements remain unchanged at roughly 9 x 7 x 2.5 cm.

31. On December 12, 2021, Plaintiff's wound vac became dislodged.

4

32.     On December 14, 2021 Dr. Sheldon noted, "Pt's VAC was noted to have fecal material under the ½ dressing on Sunday evening. VAC was removed and changed out for wet to dry dressing. Yesterday we began using santyl and continued dressing changes. An additional pressure wound was found over the left hip and was treated with mepilex… nursing is doing a much better job of Q2H turns and the patient is taking ensure with every meal... the patient is improving but we took a step backwards with the inability to keep a wound VAC seal. The wound has proven too close to the anus to reliably keep fecal material out of the wound."

33.     On December 15, 2021, Dr. Sheldon saw Plaintiff and indicated his wound was improving, "Patient is now on a clinitron bed. Continuing BID wet to dry dressing changes. Pt changed out multiple additional times due to BMs and mild fecal soilage, but no sustained fecal contamination of the wound. Pt continue to do well with changes and is actively assisting his turn to allow full visualization."

34.     On December 24, 2021 Dr. Anthony Patterson examined Plaintiff noted that most of his issues had resolved but, "Patient's primary barrier to disposition is related to finding an appropriate facility to manage his sacral decubitus ulcer."

35.     Plaintiff was discharge from Womack Army Medical Center directly to St. Joseph of the Pines of December 31, 2021 for physical therapy and rehabilitation. Upon admission it was noted that he had a Stage IV sacral decubitus ulcer.

36.     While he was a patient at St. Joseph of the Pines, Plaintiff received daily wound care.

37.     Plaintiff was discharged from St. Joseph's of the Pines on March 22, 2022.

38.     Once Plaintiff was home from St. Joseph's of the Pines, he continued to receive Home Health for wound care of his Stage IV sacral ulcer twice a week.

39.     On March 25, 2022, Plaintiff met with Dr. Amy-Jo A. Bekong who recorded "His hospital course was complicated by him acquiring a Stage IV sacral decubitus ulcer requiring surgical debridement x 3. Per family, he is having a hard time adjusting to home life due to his current medical needs. He endorses the presence of a wound nurse who visits twice weekly to care for his sacral ulcer… However his also needing a lot of assistance with personal care as family is not able to meet up with such needs at this time. His main goal on today's visit is to get supplies for home decubitus care, get walker to assist with mobility, get some assistance with ADLs."

40.     Plaintiff was discharged from Home Health Care on May 24, 2022.

41.     On September 1, 2022, Plaintiff went to the VA Medical Center in Fayetteville where Catherine A. Lucas, PA, noted that "since his last appointment he feels that is in a much better place physically as he as before. He is able to perform his ADLs without any assistance from his wife. He is using a cane for assistance with

5

ambulation and is no longer using his walker." His Stage 4 sacral decubitus ulcer was resolved.

42. Plaintiff did not have COVID at any time during the care and treatment described herein.

43. Neither the arrangement nor provision of health care services by Defendant was impacted in any manner by Defendant' decisions or activities in response to the COVID pandemic.

44. Defendant's employees and agents never informed Plaintiff or Plaintiff's family that the arrangement or provision of health care services was impacted by the COVID pandemic in any manner.

45. Defendant's employees and agents were not arranging for or providing health care services in good faith.

46. The acts and failures of Defendant, its employees, and its agents, as described in detail elsewhere in this Complaint, constitute gross negligence.

47. The acts and failures of Defendant, its employees, and its agents, as described in detail elsewhere in this Complaint, constitute reckless misconduct.

48. Defendant, its employees, and its agents were negligent, grossly negligent, reckless, willful, and wanton in their treatment of Plaintiff in that:

a. They failed to assess Plaintiff for skin breakdown;

b. They failed to prepare a plan of care to prevent Plaintiff's skin breakdown with proper interventions such as an offloading schedule and a proper mattress;

c. They failed to implement a plan of care for Plaintiff's skin breakdown;

d. They failed to reevaluate and revise the plan of care of for Plaintiff's skin breakdown since there was no plan of care for Plaintiff's skin breakdown;

e. They failed to communicate the plan of care for Plaintiff's skin breakdown since there was no plan of care for Plaintiff's skin breakdown;

f. They failed to initially follow doctor's orders for an offloading schedule and proper mattress for Plaintiff;

6

g. They failed to document their treatment of Plaintiff's skin breakdown;

h. The failed to prevent an avoidable pressure ulcer;

i. They failed to train their staff on proper assessment, care planning and implementation of a care plan for skin breakdown;

j. They failed to provide medical care and nursing care to Plaintiff in accordance with the standards of practice among members of the same profession with similar training and experience situated in the same or similar communities during the same period of time;

k. They failed to exercise reasonable care and diligence in the application of their knowledge and skill to Plaintiff;

l. They failed to use their best judgment in treating Plaintiff; and

m. They acted negligently, grossly negligently, recklessly, willfully, and wantonly in such other and further ways as will be determined through discovery and proven at trial.

49. The negligence, gross negligence, recklessness and willful and wanton misconduct of Defendant, its agents, and its employees as described hereinabove was a direct and proximate cause of the development and deterioration of Plaintiff's severe pressure injuries. As a direct and proximate result of this negligence, gross negligence, recklessness and willful and wanton misconduct Plaintiff incurred, and will continue to incur, substantial medical and hospital expenses and has suffered, and will continue to suffer, extreme pain and discomfort.

50. Plaintiff Glen R. Reed, Jr., is entitled to recover from Defendant United States of America all damages permitted under North Carolina and Federal law.

51. The medical care and all medical records pertaining to the alleged negligence that are available to Plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care.

## SECOND CLAIM FOR RELIEF

52. The allegations contained in the preceding paragraphs are re-alleged and incorporated into this Second Claim for Relief by refence.

53. The acts and omissions of Defendant, its employees, and its agents as alleged hereinabove constitute willful and wanton conduct. These acts and omissions

7

were undertaken in the conscious and intentional disregard of and indifference to the rights and safety of Plaintiff and others. Defendant and its employees and agents, knew or should have known that these acts and omissions were reasonably likely to result in injury, damage and harm to Plaintiff and others.

54. Defendant's officers and managers participated in or condoned the willful and wanton conduct of their employees and agents.

55. To the extent that this Court determines that Plaintiff is entitled to damages arising out of or relating to the catastrophic injuries to Glen R. Reed, Jr. beyond those specified under North Carolina or Federal law for compensatory damages, Plaintiff specifically seeks all such permissible damages.

## THIRD CLAIM FOR RELIEF

56. The allegations contained in the preceding paragraphs are re-alleged and incorporated into this Third Claim for Relief by reference.

57. Defendant had a duty to Plaintiff and the public to monitor and supervise Defendant's nursing staff to ensure that they were competent to provide care for the patients and that the care met the applicable standards of care.

58. Defendant committed administrative negligence, gross negligence, recklessness, and willful and wanton misconduct as follows:

    a. By failing to adopt and enforce appropriate policies and guidelines with respect to the care provided for patients;

    b. By failing to properly train their nursing staff on those policies and guidelines;

    c. By failing to properly evaluate their nursing staff on their following of those polices and guidelines; and

    d. By acting in such other and further ways as will be determined through discovery and proven at trial.

59. As a direct and proximate result of defendants' administrative negligence, gross negligence, recklessness, and willful and wanton misconduct, Plaintiff incurred substantial medical expenses and injuries.

60. Plaintiff Glen R. Reed, Jr., is entitled to recover from Defendant United States of America all damages permitted under North Carolina and Federal law.

## AGENCY AND VICARIOUS LIABILITY

61.     The allegations contained in the preceding paragraphs are re-alleged and incorporated into this claim for agency and vicarious liability.

62.     On all of the occasions complained of herein, Plaintiff was under the care, supervision, and treatment of the agents and/or employees of Defendant, and the injuries complained of herein were proximately caused by the acts and omissions of Defendant.

63.     Defendant had vicarious liability for the acts and omissions of all persons or entities under Defendant's control, either directly or indirectly, including their employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of Plaintiff.

64.     Defendant is directly liable for the acts and/or omissions alleged herein due to the direct control, ownership, and/or management of the operations of Womack Medical Center. This exertion of control, ownership, and/or management by Defendant created a dangerous environment for all patients, including Plaintiff.

65.     At all times material hereto, Defendant's representatives and staff (both medical and non-medical) acted as agents and/or employees of Defendant within the course and scope of their agency and/or employment. Consequently, Defendant is vicariously liable to Plaintiff for acts and omissions of its agents/employees under the doctrine of respondeat superior.

66.     At all times material hereto, Defendant owned, operated, managed and/or controlled Womack Army Medical Center and therefor were directly liable for all the care provided at Womack Army Medical Center. The actions of each of Defendant's servants, agents and employees as set forth herein (both medical and non-medical) are imputed to Defendant in this action.

67.     On information and belief, Defendant was aware of the dangerous environment that was created by its methods of management and/or control at all of its facilities, including Womack Army Medical Center, and the harm caused to the patients of Womack Army Medical Center, including Plaintiff.

## RULE 9(J) COMPLIANCE AND
## MOTION FOR EXPERT QUALIFICATION RE: RULE 9(J)

68.     The medical care and all medical records pertaining to the alleged negligence that are available to Plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the care did not comply with the applicable standard of care.

69.     If the Court later determines that Plaintiff's Rule 9(j) expert does not meet the requirements of Rule 702(b) or Rule 702(c), Plaintiff moves to have that person qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence, and Plaintiff hereby moves the Court, pursuant to Rule 9(j)(2), to so qualify that person.

WHEREFORE, Plaintiff prays that:

1.     Compensatory damages in an amount to be determined by the Court, all damages permitted by law, including, but not limited to, all damages recoverable to North Carolina and Federal statutory and common law;

2.     The costs of this action, including plaintiff's attorney fees, be taxed against Defendant; and

3.     He have and recover such further relief as the Court deems proper.

This the 8th day of July, 2024

/s/ Anna Kalarites_____
Anna Kalarites
PISHKO KALARITES PA
100 N. Cherry Street, Suite 510
Winston-Salem, NC  27101
(336) 310-0088
Facsimile:  252-565-0471
anna@pishkokalarites.com
State Bar No. 47849
Attorney for Plaintiff

/s/ Noah B. Abrams_____
Noah B. Abrams
ABRAMS & ABRAMS, P.A.
1526 Glenwood Ave.
Raleigh, NC 27608
(919) 755-9166
Facsimile:  (919) 755-9396
nabrams@abramslawfirm.com
State Bar No. 38735
Attorney for Plaintiff